UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------------X
                                                               :
UNITED STATES OF AMERICA,                                      :
                                                               :
                                                               :    **MEMORANDUM & ORDER**
            v.                                                 :    21-CR-411 (WFK)
                                                               :
                                                               :
BRYAN ABRAHAM,                                                 :
                                                               :
                        Defendant.                             :
---------------------------------------------------------------X

**WILLIAM F. KUNTZ, II, United States District Judge:**

On January 26, 2023, Defendant pled guilty to Counts One and Eight of a thirteen-count Indictment, charging him with: (1) Conspiracy to Commit Access Device Fraud, in violation of 18 U.S.C. § 1029(b)(2); and (2) Aggravated Identity Theft, in violation of 18 U.S.C. § 1028A(a)(1). Plea Agreement ¶ 1, ECF No. 152; *see generally* Indictment, ECF No. 70. The Court now sentences Defendant and provides a complete statement of reasons, under 18 U.S.C. § 3553(c)(2), of those factors set forth by Congress in 18 U.S.C. § 3553(a). For the reasons set forth below, Defendant is sentenced to sixty (60) months' imprisonment, to be followed by two years' supervised release, with both the standard and special conditions of supervision; restitution in the amount of $579,862.00, plus interest, as set forth in the Order of Restitution; forfeiture in the amount of $609,592.87, as set forth in the Order of Forfeiture; and a $200.00 mandatory special assessment.

## I.  Background

*Background of COVID-19 Emergency Relief Funds*

In March 2020, the President of the United States signed into law various acts providing financial assistance to individuals affected by the onset of the COVID-19 pandemic. Sealed PSR ¶¶ 9–13. These acts included the: (1) Families First Coronavirus Response Act, which provided administrative funding for state unemployment insurance ("UI") agencies; and (2) Coronavirus Aid, Relief, and Economic Security Act ("CARES" Act), which expanded the ability of states to provide UI for workers affected by COVID-19. *Id.* ¶¶ 11–12. The CARES Act created new UI programs, including Pandemic Unemployment Assistance and Federal Pandemic Unemployment

1

Compensation. *Id.* ¶ 12. As the pandemic continued, the President authorized additional funding to alleviate COVID-19-related financial hardship. *See id.* ¶¶ 15–16.

The NYSDOL operates New York's unemployment system and distributes UI benefits. *Id.* ¶ 9. New York's UI benefits are funded primarily through the New York State Unemployment Insurance Fund ("NYSUIF"). *Id.* Individuals could claim NYSUIF benefits through the NYSDOL website. *Id.* ¶ 17. Once approved, claimants could elect how to receive their NYSUIF benefits. *Id.* ¶ 18. One option was to receive a KeyBank National Association ("KeyBank") debit card pre-loaded with NYSUIF benefits. *Id.* Another was to upload personal debit card information to the NYSDOL website for funding. *Id.* A third was to upload personal bank account information to the NYSDOL website to receive a direct deposit. *Id.*

*The Fraudulent Scheme*

Between June 2020 and April 2021, Defendant and his co-conspirators submitted approximately 250 fraudulent UI claims to NYSDOL using the personal identifying information ("PII") of real individuals ("the victims"). *Id.* ¶ 21. Defendant and his co-conspirators obtained these victims' PII by, among other things, using Bitcoin to purchase the information from individuals on Telegram, an encrypted messaging application. *Id.* ¶ 22.

Defendant and his co-conspirators opted to receive NYSUIF benefits through KeyBank debit cards and direct deposit. *Id.* ¶ 24. Defendant and his co-conspirators made purchases directly with the KeyBank debit cards or else used them to withdraw large amounts cash from various ATM machines throughout the Eastern District. *Id.* ¶ 25. Defendant was arrested twice during this offense period: first on August 28, 2020, and a few weeks later, on September 18, 2020. *Id.* Both times, Defendant or a co-conspirator possessed a KeyBank debit card issued in one of their victims' names. *Id.*

During the offense period, Defendant and his co-conspirators took photographs flaunting their wealth. *Id.* ¶ 26. In online posts, Defendant and his co-conspirators can be seen wearing designer clothes, accessories, and jewelry while surrounded by stacks of cash and luxury cars. *Id.* ¶ 27; *see also* Government Sentencing Memorandum ("Gov't Sent'g Mem.") at 3, ECF No. 300. Defendant himself purchased two such luxury cars during the course of the investigation. *Id.* ¶ 29.

Defendant and his co-conspirators ultimately submitted more than $8,900,000.00 in fraudulent claims, receiving more than $1,750,000.00 in NYSUIF benefits before NYSDOL detected the fraud. *Id.* ¶ 21. Defendant submitted fraudulent claims under the names of at least seventy-eight victims, yielding approximately $579,862.00 in fraudulent NYSUIF benefits. *Id.* ¶ 29.[1]

*Procedural History*

On May 14, 2021, the Government filed a then-sealed Complaint alleging Defendant and others fraudulently filed federal and state unemployment insurance claims between June 2020 and April 2021, using the PII of third-party victims to receive UI benefits funded by the COVID-19 pandemic assistance programs. Compl., ECF No. 1.

---

[1] The PSR and the Government's Sentencing Memorandum both discuss Defendant's conduct related to other fraudulent schemes not covered by the instant offense. First, Defendant was in a Telegram group chat with co-defendants in which the chat members discussed how to make fraudulent claims on Blueacorn and Womply, providers of Paycheck Protection Program (PPP) loans. PSR ¶ 39; Gov't Sent'g Mem. at 3–4. Defendant suggested co-defendant Vazquez steal his girlfriend's grandmother's identifying information to make such fraudulent claims. PSR ¶ 39; Gov't Sent'g Mem. at 3. Second, in another Telegram chat between Defendant and a co-defendant, Defendant shared forged Ohio tax forms for a third-party and indicated making fraudulent claims for unemployment benefits in Michigan. PSR ¶ 40; Gov't Sent'g Mem. at 3–4. Third, Defendant was involved in a scheme to purchase iPhones for resale using the names of various third-party victims to obtain financing. *Id.* ¶ 41. Defendant discussed this scheme in a Telegram chat, telling co-defendants where he bought his "trappys," a reference to trap or burner phones. *Id.* ¶ 41.

3

On August 5, 2021, a grand jury returned a thirteen-count Indictment against all defendants in this case. Indictment, ECF No. 70. The Indictment charged Defendant with: one count of Conspiracy to Commit Access Device Fraud, in violation of 18 U.S.C. §§ 1029(a)(2), (a)(5), and (b)(2); one count of Access Device Fraud, in violation of 18 U.S.C. §§ 1029(a)(5) and (c)(1)(A)(ii); and one count of Aggravated Identity Theft, in violation of 18 U.S.C. §§ 1028A(a)(1), (b), (c)(4), and (c)(5). *Id.*

Defendant was released from custody on May 18, 2021, on a $75,000.00 bond with reporting conditions. PSR ¶ 6. On May 24, 2021, the Court modified Defendant's release conditions to include participation in the Special Options Services (S.O.S.) program. *Id.* As part of his participation in the S.O.S. program, Defendant attended vocational training sessions. *Id.*

On May 6, 2022, co-defendant Seth Golding pled guilty to one count of Conspiracy to Commit Access Device Fraud, in violation of 18 U.S.C. §§ 1029(b)(2) and (c)(1)(A)(ii). Plea Agreement as to Seth Golding, 1:22-CR-143, ECF No. 90. On June 9, 2022, co-defendant Andre Ruddock pled guilty to one count of Operating an Unlicensed Money Transmitting Business, in violation of 18 U.S.C. § 1960(a). Plea Agreement as to Andre Ruddock, ECF No. 121. On January 23, 2023, co-defendant Carlos Vazquez pled guilty to one count of Conspiracy to Commit Access Device Fraud, in violation of 18 U.S.C. § 1029(b)(2), and one count of Aggravated Identity Theft, in violation of 18 U.S.C. § 1028A(a)(1). Plea Agreement as to Carlos Vazquez, ECF No. 148. On January 24, 2023, co-defendant Gianni Stewart pled guilty to one count of Conspiracy to Commit Access Device Fraud, in violation of 18 U.S.C. § 1029(b)(2). Plea Agreement as to Gianni Stewart, ECF No. 150.

On January 26, 2023, Defendant pled guilty to one count of Conspiracy to Commit Access Device Fraud, in violation of 18 U.S.C. § 1029(b)(2), and one count of Aggravated

Identity Theft, in violation of 18 U.S.C. § 1028A(a)(1). Plea Agreement as to Bryan Abraham. On February 7, 2023, co-defendant Angel Cabrera pled guilty to one count of Conspiracy to Commit Access Device Fraud, in violation of 18 U.S.C. § 1029(b)(2). Plea Agreement as to Angel Cabrera, ECF No. 157. On February 17, 2023, co-defendant Armani Miller pled guilty to one count of Conspiracy to Commit Access Device Fraud, in violation of 18 U.S.C. § 1029(b)(2). Plea Agreement as to Armani Miller, ECF No. 160.

On January 29, 2025, the Court removed Defendant from the S.O.S. program following violations of his conditions of release. Sealed Pretrial Modification of Bond Conditions, ECF No. 284. To date, the Court has sentenced four of Defendant's co-defendants: Andre Ruddock, Gianni Stewart, Seth Golding, and Armani Miller.

## II. Legal Standard

Congress set forth the procedures for imposing a sentence in a criminal case in 18 U.S.C. § 3553. Together with 18 U.S.C. § 3553, the United States Federal Sentencing Guidelines operate as the "starting point and the initial benchmark" for a court evaluating a criminal sentence. *Gall v. United States*, 552 U.S. 38, 49 (2007). If and when a district court chooses to impose a sentence outside of the Sentencing Guidelines range, the court "shall state in open court the reasons for its imposition of the particular sentence, and . . . the specific reason for the imposition of a sentence different from that described" in the Guidelines. 18 U.S.C. § 3553(c)(2). The court must also "state[] with specificity" its reasons for so departing "in a statement of reasons form." *Id.* The court's statement of reasons "shall be a simple, fact-specific statement explaining why the guidelines range did not account for a specific factor or factors under § 3553(a)." *United States v. Davis*, 08-CR-0332, 2010 WL 1221709, at *1 (E.D.N.Y. Mar. 29, 2010) (Weinstein, J.) (internal citation omitted).

When determining the appropriate sentence, the court must consider seven different factors: (1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the need for the sentence imposed; (3) the kinds of sentences available; (4) the kinds of sentence and the sentence range established by the Guidelines; (5) any pertinent policy statements issued by the United States Sentencing Commission; (6) the need to avoid unwarranted sentence disparities among similar defendants found guilty of similar conduct; and (7) the need to provide restitution to victims of the offense. *See* 18 U.S.C. § 3553(a). The Court now addresses each factor in turn.

### III. Analysis

#### A. The Nature and Circumstances of the Offense and the History and Characteristics of Defendant

The first § 3553(a) factor requires the Court to evaluate "the nature and circumstances of the offense and the history and characteristics of the defendant." 18 U.S.C. § 3553(a)(1).

##### *1.   Family and Personal Background*

Defendant was born on June 6, 2002, in Brooklyn, New York. PSR ¶ 80. He was raised in a middle-income household free of abuse. *Id.* ¶ 82. His father is a self-employed contractor; his mother is a housekeeper. *Id.* ¶ 80. Both are in relatively good health. *Id.* Defendant has two siblings, a brother and a sister. *Id.* ¶ 81. He has a good relationship with his family members, who are aware of the instant arrest and remain supportive. *Id.*

Defendant started dating his current romantic partner in 2020; they have one child together (a son). *Id.* ¶ 83. They separated for a brief period around the time of their son's birth but have since repaired their relationship. *Id.* As of July 23, 2023, Defendant moved in with his girlfriend, their son, and his girlfriend's mother. *Id.* ¶ 84. Defendant's girlfriend describes him

as a "really good father" who is involved in their son's care. *Id.* ¶ 85. She is aware of the instant case and supportive. *Id.* ¶¶ 85–86.

2. *Educational and Employment History*

Defendant attended South Shore High School in Brooklyn. *Id.* ¶ 100. Due to declining grades and inconsistent class attendance, Defendant transferred to East Brooklyn Community High School. *Id.* ¶ 100. Defendant attended East Brooklyn Community High School until 2020. *Id.* ¶ 100. He stopped attending school when classes became virtual due to the COVID-19 pandemic. *Id.*

In 2021, Defendant worked construction with his father and as a seasonal employee at FedEx unloading trucks. *Id.* ¶¶ 110–11. From January 2022 to March 2022, Defendant worked part-time for Whole Foods. *Id.* ¶ 108. From May 2022 to October 2022, Defendant worked as an overnight delivery processor at Nordstrom Rack. *Id.* ¶ 106. From November 2022 to February 2023, Defendant worked at a BJ's Wholesale store in Brooklyn. *Id.* ¶ 104. Defendant was fired from this position after a physical altercation with another employee. *Id.* ¶ 104. From March 2023 to the present, Defendant has worked as a part-time cashier and stockperson at a Marshalls in Brooklyn, assisted his father with carpentry jobs, and worked at R&M Maintenance and Repairs. *Id.* ¶ 102; Sealed Addendum to the PSR at 3, ECF No. 301.

3. *Prior Convictions*

Defendant has no prior convictions. *Id.* ¶¶ 71–74.

4. *Physical and Mental Health*

In 2019, Defendant was hit in the left leg by a stray bullet. *Id.* ¶ 89. The bullet shattered his femur, requiring surgery to insert a rod into his leg. *Id.* ¶ 89. Defendant reports no lingering effects from the surgery. *Id.* ¶ 89.

7

Defendant reports no history of mental or emotional health problems. *Id.* ¶ 90. He reports experiencing some levels of stress and anxiety due to the instant prosecution and legal proceedings. *Id.* ¶ 90.

     5.    *Substance Abuse*

Defendant reports not liking alcohol and not really drinking. *Id.* ¶¶ 94, 97. Defendant first smoked marijuana when he was sixteen years old and reports smoking at least once a day prior to the instant arrest. *Id.* ¶ 95. Defendant does not believe his marijuana use was problematic. *Id.* ¶ 96. Although Defendant reports feeling no urge to smoke marijuana again, *see* PSR ¶ 96, he tested positive for marijuana use multiple times while awaiting sentencing. *See* Sealed Pretrial Violation Memoranda, ECFs No. 159, 214, 269, 274, and 280.

     6.    *Nature and Circumstances of the Offense*

The Court's previous statements address the nature and circumstances surrounding the instant offense. *See supra* Part I.

**B. The Need for the Sentence Imposed**

The second § 3553(a) factor instructs the Court to consider "the need for the sentence imposed (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (B) to afford adequate deterrence to criminal conduct; (C) to protect the public from further crimes of the defendant; and (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner." 18 U.S.C. § 3553(a)(2).

The Court's sentence recognizes the seriousness of Defendant's conduct, which involved stealing innocent victims' identities to access disaster relief funds for his personal gain. PSR ¶ 21. Defendant and his co-conspirators submitted approximately 250 claims to New York's

unemployment benefits office, claiming nearly $9,000,000.00 in fraudulent benefits and receiving more than $1,750,000.00 in disbursements. *Id.* Defendant submitted claims on behalf of more victims (seventy-eight) and received more money (almost $600,000.00) than any other co-defendant. Gov't Sent'g Mem. at 7. The Government characterizes Defendant as "incorrigible." *Id.* He continued the conspiracy despite being arrested twice and being concurrently involved in other frauds: forging tax documents, submitting fraudulent claims in other states, and using victims' personal identifying information to finance iPhones for resale. *Id.*

The Court's sentence will deter others from engaging in similar conduct and justly punish Defendant for his crimes. Accordingly, the Court's sentence is "sufficient, but not greater than necessary" to comply with the purposes set forth in this factor. 18 U.S.C. § 3553(a).

### C. The Kinds of Sentences Available

The third § 3553(a) factor requires the Court to detail "the kinds of sentences available" for Defendant. 18 U.S.C. § 3553(a)(3). Defendant pled guilty to one count of Conspiracy to Commit Access Device Fraud, in violation of 18 U.S.C. § 1029(b)(2), and one count of Aggravated Identity Theft, in violation of 18 U.S.C. § 1028A(a)(1). Plea Agreement ¶ 1.

<u>Count One: Conspiracy to Commit Access Device Fraud</u>

Defendant faces a statutory maximum term of seven-and-a-half years' imprisonment and no minimum term. 18 U.S.C. §§ 1029(b)(2), (c)(1)(A)(ii). He also faces a maximum term of three years' supervised release. 18 U.S.C. §§ 3583(b)(2), (e). If a condition of supervised release is violated, Defendant may be sentenced to up to two years without credit for pre-release imprisonment or time previously served on post-release supervision. 18 U.S.C. §§ 3583(b)(2)

9

and (e). Defendant is ineligible for probation because he is being sentenced at the same time to a term of imprisonment for the same or a different offense. 18 U.S.C. § 3561(a)(3).

In addition, Defendant faces a maximum fine of the greater of $250,000.00, or twice the gross gain or twice the gross loss, which he appears unable to pay. 18 U.S.C. §§ 3571(b)(2), (b)(3), and (d); PSR ¶ 115. The Court is also required to impose a mandatory special assessment of $100.00 per count pursuant to 18 U.S.C. § 3013(a)(2)(A).

Count Eight: Aggravated Identity Theft

Defendant faces a statutory term of two years' imprisonment. 18 U.S.C. § 1028A(a)(1). The sentence imposed on this count must run consecutively to the sentence imposed on any other count. *See* 18 U.S.C. § 1028A(b)(2). Defendant also faces a maximum term of one year of supervised release. 18 U.S.C. §§ 3583(b)(2), (e). If a condition of supervised release is violated, Defendant may be sentenced to up to one year without credit for pre-release imprisonment or time previously served on post-release supervision. 18 U.S.C. §§ 3583(b)(2), (e). Pursuant to 18 U.S.C. § 3624(e), multiple terms of supervised release shall run concurrently. Defendant is ineligible for probation because probation is expressly precluded by statute. 18 U.S.C. § 1028A(b)(1); 18 U.S.C. § 3561(a)(2). Defendant faces the same financial penalties for Count Eight as for Count One.

### D. The Kinds of Sentence and the Sentencing Range Established for Defendant's Offense

The fourth § 3553(a) factor requires the Court to discuss "the kinds of sentence and the sentencing range established for . . . [t]he applicable category of offense committed by the applicable category of defendant as set forth in the guidelines." *Id.* § 3553(a)(4)(A).

Count One: Conspiracy to Commit Access Device Fraud

The applicable guideline for Conspiracy to Commit Access Device Fraud is U.S.S.G. §2B1.1(a)(2), which provides a base offense level of six. Enhancements apply. Sixteen levels are added under U.S.S.G. §2B1.1(b)(1)(I) because the offense involved a loss of $1,788,429.00, which is more than $1,500,000.00 but less than $3,500,000.00. Two levels are added under U.S.S.G. §2B1.1(b)(2)(A)(i) because the offense involved ten or more victims. Two levels are added under U.S.S.G. §2B1.1(b)(12) because the offense involved fraud in connection with major disaster or emergency benefits (*see* 18 U.S.C. § 1040). Three levels are added under U.S.S.G. §3B1.1(b) because Defendant acted as a manager or supervisor—but not an organizer or leader—in an offense involving five or more participants.

Three levels are reduced for Defendant's timely acceptance of responsibility under U.S.S.G. §3E1.1(a)–(b). PSR ¶¶ 68–69. An additional level is reduced under the global resolution policy consideration enunciated in U.S.S.G. §5K2.0. Gov't Sent'g Mem. at 5 n.3.

Count Eight: Aggravated Identity Theft

The applicable guideline for Aggravated Identity Theft is U.S.S.G. §2B1.6, which provides a base offense level of twenty-four. Pursuant to U.S.S.G. §2B1.6(a), adjustments and considerations for Defendant's Criminal History and Criminal Livelihood do not apply to Count Eight. Instead, the Guidelines sentence is the term of imprisonment required by statute, which is two years. 18 U.S.C. § 1028(a)(1).

11

Criminal History Category

All parties agree Defendant has no criminal history,[2] resulting in a criminal history category of I. PSR ¶ 73; Gov't Sent'g Mem. at 6; see Defense's Sentencing Memorandum ("Def. Sent'g Mem.") at 12, ECF No. 296.

Effective Guidelines Ranges

The parties disagree as to Defendant's total offense level for Count One. Probation and the Government argue Defendant has a total offense level of 25, which, together with a criminal history category of I, results in a Guidelines range of 57–71 months' imprisonment. PSR ¶ 118; Addendum to the PSR at 2; Gov't Sent'g Mem. at 5–6.

Defense counsel endorses the Plea Agreement's stipulated range of 57–71 months' imprisonment. Def. Sent'g Mem. at 3–4. Defense counsel also uses the ABA's alternative guidelines to reach a total offense level of 17, which, together with a criminal history category of I, results in a Guidelines range of 24–30 months' imprisonment. *Id.* at 12. Defense counsel presents the alternative guidelines calculation solely as an argument in favor of a downward variance.

The Parties' Sentencing Recommendations

Probation breaks its recommendation down by count. For Count One, Probation recommends a below-Guidelines sentence of thirty-six (36) months' imprisonment; two (2) years' supervised release with special conditions; restitution in the amount of $1,788,429.00, due immediately and payable at a rate of $25.00 per quarter while in custody and 10% of gross monthly income while on supervised release; and a $100.00 mandatory special assessment. For

---

[2] Because Defendant stipulated to this enhancement for a managerial role, he is ineligible for the zero-point offender reduction. U.S.S.G. §4C1.1(10); *see also* Gov't Sent'g Mem. at 5 n.2.

Count Two, Probation recommends the statutorily required sentence of two (2) years' imprisonment, to run consecutively to any term of imprisonment imposed on Count One; one (1) year of supervised release with special conditions, to run concurrent to any term of supervised release imposed on Count One; and a $100.00 mandatory special assessment (resulting in a total mandatory special assessment of $200.00). Prob. Sent'g Rec. at 1, ECF No. 189-1.

The Government recommends a below-Guidelines sentence of not less than sixty (60) months' imprisonment total on both Counts One and Eight. Gov't Sent'g Mem. at 1. Defense counsel recommends a below-Guidelines sentence of forty (40) months' imprisonment, reflecting sixteen (16) months on Count One and twenty-four (24) months on Count Eight. Def. Sent'g Mem. at 1.

The Court appreciates the sentencing arguments raised by all parties and has considered each in turn.

### E. Pertinent Policy Statement(s) of the Sentencing Commission

The fifth § 3553(a) factor requires the Court to evaluate "any pertinent policy statement . . . issued by the Sentencing Commission." 18 U.S.C. § 3553(a)(5).

Probation directs the Court to the policy considerations in U.S.S.G. §5K2.21, stating Defendant's participation in additional fraudulent conduct not captured in the Guidelines calculations for the instant offense could constitute grounds for an upward departure. PSR ¶ 134; *see* U.S.S.G. §5K2.21. However, the Government argues "none of [Defendant's] uncharged crimes was as serious, as extensive, or as brazen as the charged conduct. Accordingly, the seriousness of the offense is adequately captured in the Guidelines calculation." *Id.* at 7 n.4.

Defense counsel also directs the Court to the policy considerations in U.S.S.G. §5H1.1, which the United States Sentencing Commission amended in November 2024. Def. Sent'g

13

Mem. at 4. Prior to the amendment, U.S.S.G. §5H1.1 stated: "Age may be relevant in determining whether a departure is warranted." *See* United States Sentencing Commission, Amendment 829. In its amended form, U.S.S.G. §5H1.1 states: "A downward departure also may be warranted due to the defendant's youthfulness at the time of the offense. . . ." *Id.*; Def. Sent'g Mem. at 4. Defense counsel emphasizes Defendant was only eighteen at the time he committed the instant offense. *Id.*; Addendum to PSR at 3.

### F. The Need to Avoid Unwarranted Sentence Disparities

The sixth § 3553(a) factor requires the Court to consider "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct." 18 U.S.C. § 3553(a)(6).

On April 28, 2023, the Court sentenced co-defendant Andre Ruddock to three (3) years' probation for one count of Operating an Unlicensed Money Transmitting Business, in violation of 18 U.S.C. § 1960(a). Memorandum and Order as to Andre Ruddock, ECF No. 174. On May 8, 2024, the Court sentenced co-defendant Gianni Stewart to twenty-four (24) months' imprisonment for one count of Conspiracy to Commit Access Device Fraud. Memorandum and Order as to Gianni Stewart, ECF No. 259. On May 13, 2024, the Court sentenced co-defendant Seth Golding to fifty-seven (57) months' imprisonment for one count of Conspiracy to Commit Access Device Fraud. Memorandum and Order as to Seth Golding, 1:22-CR-143, ECF No. 118. And on May 14, 2024, the Court sentenced co-defendant Armani Miller to fifty-seven (57) months' imprisonment for one count of Conspiracy to Commit Access Device Fraud. Memorandum and Order as to Armani Miller, ECF No. 264.

Defense counsel argues a below-Guidelines sentence is appropriate to avoid unwarranted sentencing disparities between Defendant and his co-defendants. Def. Sent'g Mem. at 13.

Specifically, defense counsel argues Defendant's conduct—and corresponding culpability—falls between co-defendant Stewart, on the one hand, and co-defendants Miller and Golding, on the other hand. Def. Sent'g Mem. at 14. As such, defense counsel argues an appropriate sentence lies between the sentences received by these co-defendants. *Id.*

The Government avers the appropriate inquiry for the Court is "among similarly situated defendants," and not simply "disparity among co-defendants." Gov't Sent'g Mem. at 9 (quoting *United States v. Kanagbou*, 726 F. App'x 21, 25 (2d Cir. 2018)). The Government notes that although Defendant's "charged conduct was far more extensive than that of his co-defendants," he has a meaningfully different criminal history and record (*e.g.*, co-defendants Miller, Golding, and Stewart all had issues with firearms while on supervised release). *Id.* at 9–10.

For the reasons stated in this Memorandum and Order, and considering the other six § 3553(a) factors, the Court's sentence avoids unwarranted sentence disparities.

### G. The Need to Provide Restitution

Finally, the seventh § 3553(a) factor requires the Court to touch upon "the need to provide restitution to any victims of the offense." 18 U.S.C. § 3553(a)(7).

Restitution is mandatory in this case pursuant to 18 U.S.C. § 3663A. The Court entered an Order of Restitution in this case on May 10, 2024, directing Defendant to pay a total restitution amount of $579,862.00, plus interest. Order of Restitution ¶ 2, ECF No. 253. The Court further reserves its right, pursuant to 18 U.S.C. § 3664(d)(5), to hold an evidentiary hearing within 90 days after this sentencing to determine the specific amounts owed to Defendant's victims.

## IV. Conclusion

For the reasons set forth above, Defendant is sentenced to sixty (60) months' imprisonment, to be followed by two years of supervised release, with both the standard and special conditions of supervision; restitution in the amount of $579,862.00, plus interest, as set forth in the Order of Restitution; forfeiture in the amount of $609,592.87, as set forth in the Order of Forfeiture; and a $200.00 mandatory special assessment. This sentence is sufficient but no greater than necessary to accomplish the purposes of § 3553(a)(2). The Court does not impose a fine given Defendant's apparent inability to pay.

The Court expressly adopts the factual findings of the Sealed Presentence Investigation Report and Addendum thereto, as corrected herein, to the extent those findings are not inconsistent with this opinion.

SO ORDERED

s/ WFK

HON. WILLIAM F. KUNTZ, II
UNITED STATES DISTRICT JUDGE

Dated: May 21, 2025
       Brooklyn, New York

16